**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **DAWN M. BLEVINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 07-1342-JWL** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's reliance on the vocational expert's testimony, the court ORDERS that the Commissioner's decision is REVERSED, and that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I.      Background

This case has been proceeding on a tortuous path for more than eight years now. Plaintiff applied for DIB and SSI on January 9, 2003[1] alleging disability since May 4, 2001. (R. 31, 42, 123-25, 905-07).[2] The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ). (R. 43-44, 65-69, 71-75, 908-09). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Jesse H. Butler on March 7, 2006. (R. 48). Thereafter, ALJ Butler issued a decision on April 19, 2006 finding Plaintiff was not disabled, and denying her applications. (R. 48-54).

Plaintiff sought Appeals Council review of ALJ Butler's decision, but her request was denied on October 18, 2007. (R. 85, 91-95). Plaintiff filed this case seeking judicial review of the decision. (Doc. 1). Before filing an answer, the Commissioner discovered

---

[1]The SSI application in the administrative record is dated January 7, <u>2002</u>. (R. 905-07). However, both the ALJ and the Appeals council stated that the SSI application was filed on January 9, 2003, the same date as the DIB application. (R. 20, 42). In her statement of facts, Plaintiff asserted she filed an SSI application on January 7, 2002, and a DIB application on January 9, 2003, but she did not allege error in the contrary findings of the ALJ or of the Appeals Council. (Pl. Br. 2). Therefore, the court accepts the Commissioner's findings as unopposed for purposes of this opinion. If the date is significant or erroneous, Plaintiff may address the issue on remand.

[2]As is discussed more fully below, the Commissioner's final decision which the court has jurisdiction to review is the "Decision of the Appeals Council" issued February 19, 2010. (R. 15-20). Nonetheless, the Appeals Council adopted the "evidentiary facts, as applicable" which were found by the administrative law judge (ALJ) in a decision issued May 13, 2009. (R. 16). Therefore, the factual background cited by this court is that found by the ALJ, along with those additional facts found by the Appeals Council, being careful to recognize that in case of a conflict, the facts as found by the Appeals Council constitute the findings of the Commissioner.

that the tape recording of the March 7, 2006 hearing was blank, and filed a motion

pursuant to the sixth sentence of 42 U.S.C. § 405(g) seeking remand for a new hearing

and for further proceedings before the Commissioner. (Doc. 5). Magistrate Judge John

T. Reid issued a Report and Recommendation, recommending that the Commissioner's

motion be granted, the decision be reversed, and the case be remanded to the

Commissioner for further proceedings in accordance with sentence six of the statute.

(Doc. 6). On March 4, 2008, Judge Monti L. Belot adopted the Report and

Recommendation, and the case was remanded for further proceedings. (Doc. 7).[3]

After the Appeals Council denied review of ALJ Butler's decision, and before

Plaintiff filed her complaint with this court, she filed another application for SSI with the

Social Security Administration on October 29, 2007. (R. 911-16). While judicial review

was pending before the district court, that application was denied both initially and on

reconsideration. (917-25). On remand, the Appeals Council vacated ALJ Butler's

---

[3]The court notes that judgment was erroneously entered in this case on March 4, 2008. (Doc. 8). However, the Report and Recommendation did not recommend entry of judgment, and in fact noted that remand was requested and justified by the Commissioner in accordance with the sixth sentence of 42 U.S.C. § 405(g). (Doc. 6). In a sentence six remand, judgment should not be entered, and the court retains jurisdiction over the case pending the proceedings below and the Commissioner's filing of his additional and modified findings of fact and a transcript of the additional record and testimony. 42 U.S.C. § 405(g) (sentence six); see also Melkonyan v. Sullivan, 501 U.S. 99-102 (1991) (interpreting and correlating sentence four and sentence six of § 405(g)). Moreover, Judge Belot's Order adopting the Report and Recommendation did not order entry of judgment. (Doc. 7). Therefore, the court will correct the erroneous entry of judgment and will order that the judgment entered on March 4, 2008 be stricken in accordance with Rule 60(a) of the Federal Rules of Civil Procedure.

decision dated April 19, 2006, consolidated the SSI application filed October 29, 2007, and remanded the consolidated case to an ALJ for further proceedings in accordance with the district court's order, and for a new decision. (R. 115-16).

ALJ Guy E. Taylor conducted further proceedings after remand, accepted additional evidence, and held another hearing on March 9, 2009. (R. 31). Plaintiff appeared at the hearing represented by counsel. (R. 31, 1082). Testimony was taken from Plaintiff and from a vocational expert. (R. 1082-1134). On May 13, 2009, ALJ Taylor issued a decision in which he found Plaintiff did not meet the insured status requirements during the alleged period of disability, and dismissed her DIB application. (R. 31-42). With regard to Plaintiff's SSI applications, the ALJ determined that although she could not perform her past relevant work, there are a significant number of jobs available in the economy within Plaintiff's residual functional capacity (RFC), and she is therefore not disabled within the meaning of the Act, and he denied her applications. (R. 40-42).

Plaintiff requested Appeals Council review of ALJ Taylor's decision (R. 26-27), and the Appeals Council granted the request, assumed jurisdiction, and notified Plaintiff of its intended actions. (R. 1072-74). After Plaintiff provided a letter explaining her objections to the Appeals Council's intended actions (R. 1075-81), the Council considered Plaintiff's objections and the additional evidence presented as listed on the "Supplemental List of Exhibits" and issued the "Decision of the Appeals Council" on February 19, 2010. (R. 12, 15-20, 926-1081). In its decision, the Appeals Council

considered both Plaintiff's DIB application and her SSI applications, and determined that although Plaintiff cannot perform her past relevant work, she has the RFC to perform certain jobs existing in significant numbers in the economy, and concluded that she has not been disabled at any time through May 19, 2009, the date of the ALJ's decision.  (R. 15-20).  In accordance with Local Rule 83.7.2, the Commissioner filed the transcript in this case on April 14, 2010 (Doc. 9), and Plaintiff filed an "Amended Complaint" on May 12, 2010.  (Doc. 11).  Briefing has since been completed, and the case is before the court pursuant to 42 U.S.C. § 405(g), for judicial review of the Commissioner's final decision.

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  <u>Wall v. Astrue</u>, 561 F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of "any final decision of the Commissioner of Social Security made after a hearing."  It provides that "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 404(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the Commissioner applied the correct legal standard.  <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007); <u>accord</u>, <u>White v. Barnhart</u>, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  <u>Wall</u>, 561 F.3d at 1052; <u>Gossett v. Bowen</u>, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."

Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a

determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084.)

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims error in that (1) "the ALJ failed to give proper weight to the findings of Nurse Practitioner Arlene Long" (Pl. Br. 12) and to the findings of Dr. Johns;

(2) "the ALJ's conclusions that Plaintiff's mental health impairments are not 'severe'" is refuted by Dr. John's report and treatment records, id. at 14-15; (3) Dr. McGehee's report and evaluation were never evaluated by an ALJ; and (4) the hypothetical question presented by the ALJ to the vocational expert does not precisely match the RFC assessed in the ALJ's decision.  In his response, the Commissioner argues that "The ALJ made a proper step two finding" (Comm'r Br. 6); "The ALJ properly considered the opinion of Arlene Long, A.R.N.P.," id. at 7; and, "The hypothetical question was consistent with the RFC finding."  Id. 10.

## III.    What Is the "Final Decision of the Commissioner" for the Court's Review?

As a preliminary matter, the court must determine what is the "final decision of the Commissioner" over which the court might exercise jurisdiction.  The parties' briefs reflect confusion regarding what that is.  In her "Summary of Argument," Plaintiff alleges errors in the decision of ALJ Taylor, and argues that the Appeals Council "repeated the original errors of the ALJ in affirming the substance and outcome of his decision with essentially the same rationale articulated by the ALJ and failing to address the issues raised by Plaintiff's Counsel in his letter of exception."  (Pl. Br. 9).  She argues that the "Appeals Council further erred in not remanding this matter for further consideration by the Administrative Law Judge despite the submission of significant additional evidence to the Appeals Council, much of which evidence has never been seen or considered by the ALJ."  (Pl. Br. 9).  She then relates each of her individual allegations of error to the May 13, 2009 decision of ALJ Taylor.  Id. at 10-19.  The Commissioner's brief is equally

unclear. He correctly states, "The issues are whether the final decision of the Commissioner is supported by substantial evidence on the record as a whole and whether the correct legal standards were followed," but he does not clarify what is the "final decision of the Commissioner" in this case. (Comm'r Br. 4). As did Plaintiff, he also relates each of his arguments to ALJ Taylor's decision. Id. at 6-11.

Perhaps most telling in this regard is the parties' treatment of the alleged step two error. Plaintiff's brief implies the ALJ erred because he concluded at step two of the evaluation process that Plaintiff's mental impairments are not "severe" within the meaning of the Act and the regulations. (Pl. Br. 14-15). In response to Plaintiff's allegations, the Commissioner argues that the ALJ made a proper step two finding, and explains that in the circumstances here, the ALJ "found that Plaintiff had a severe combination of impairments and considered all of the evidence; therefore, the ALJ did not err at step two of the sequential evaluation process when the ALJ did not specifically find that Plaintiff's depression and anxiety were severe." (Comm'r Br. 6). Perhaps as an afterthought--in the final sentence of this section of his brief--the Commissioner stated, "The Appeals Council found that Plaintiff's depression/anxiety was severe." Id. (citing (R. 19)) (from the "Decision of the Appeals Council").

As Plaintiff asserts, the ALJ's decision did not include any mental impairments in its step two finding regarding severe impairments. (R. 34-36). Nevertheless, the ALJ specifically discussed mental impairments in his step three analysis, and found that Plaintiff has mild restrictions in activities of daily living; mild difficulties in social

functioning; mild to moderate difficulties with regard to concentration, persistence, or

pace; and no episodes of decompensation.  (R. 36).  In the Appeals Council's decision, on

the other hand, the Council specifically found that Plaintiff has severe impairments

including "depression/anxiety."  (R. 19) (finding no. 2).  Moreover, the Council

"conclude[d] that the depression/anxiety is a severe impairment, imposing more than

minimal mental work restrictions."  (R. 16).  With regard to the step two issue,

determination of what is the "final decision of the Commissioner" is dispositive of the

court's consideration.  If the ALJ's decision is the final decision, the court will find error

in the ALJ's finding that Plaintiff's mental impairments are not severe, because mild to

moderate difficulties with concentration, persistence, or pace constitute severe mental

impairments as a matter of law.  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  If the

Appeals Council's decision is the final decision, the court will find that Plaintiff's

allegation of error fails because the Appeals Council in fact determined that Plaintiff's

mental impairments are severe.

In 2000, the Supreme Court explained how a question regarding the "final decision

of the Commissioner" is determined in accordance with the Act and the regulations

promulgated thereunder.

> The Social Security Act provides that "[a]ny individual, after any final
> decision of the Commissioner of Social Security made after a hearing to
> which he was a party, ... may obtain a review of such decision by a civil
> action" in federal district court. 42 U.S.C. § 405(g).  But the Act does not
> define "final decision," instead leaving it to the SSA to give meaning to that
> term through regulations.  See § 405(a); Weinberger v. Salfi, 422 U.S. 749,
> 766, 95 S. Ct. 2457, 45 L. Ed. 2d 522 (1975).  SSA regulations provide that,

if the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision.  But if, as [was the case in Sims], the Council denies the request for review, the ALJ's opinion becomes the final decision.  See 20 CFR §§ 404.900(a)(4)-(5), 404.955, 404.981, 422.210(a) (1999).

Sims v. Apfel, 530 U.S. 103, 106-107 (2000).

Applying the regulations to this case as explained in Sims, the court finds that the "Decision of the Appeals Council" is the "final decision of the Commissioner."  Here, the Appeals Council assumed jurisdiction of the case, and issued its own decision.  (R. 15-20, 1072).  Therefore, the ALJ's decision has been rejected, at least in part, and the "Decision of the Appeals Council" is the final decision of the Commissioner.  The court will review the Appeals Council's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the Commissioner applied the correct legal standard.  Lax, 489 F.3d at 1084.

Judicial review of the "Decision of the Appeals Council" is complicated in this case by the fact that the Appeals Council explicitly rejected only ALJ Taylor's dismissal of the DIB application and his finding regarding disability insured status, and the Council "adopted," "agreed with," or otherwise accorded various degrees of acceptance to portions of both the April 19, 2006 opinion of ALJ Butler, and the May 13, 2009 opinion of ALJ Taylor.  For example, the Appeals Council stated it "adopts the evaluation of the evidence in the hearing decisions, but not necessarily the findings and conclusions in those decisions," (R. 16) (emphasis added), and qualified its agreement with ALJ Taylor's findings under the five steps of the sequential evaluation process:  "The Appeals

Council agrees with the Administrative Law Judge's findings under steps 1, 2, 3, 4 and 5 of the sequential evaluation; namely, that the claimant has not engaged in substantial gainful activity since May 4, 2001, that she has severe impairments which do no meet or equal in severity an impairment in the Listing of Impairments, [and] that she is not capable of performing past relevant work." Id. (emphases added). The Council noted that previously it had addressed certain evidence in its denial of Plaintiff's request for review of ALJ Butler's decision on October 18, 2007. (R. 17) (citing Ex. 15B (R. 91-95)). Finally, the Appeals Council itself considered, discussed, and evaluated the evidence submitted to it after ALJ Taylor's decision (including the medical opinion of Dr. McGehee), stated its evaluation of step four and step five of the sequential process, and stated its findings and ultimate decision. (R. 17-20).

Therefore, in reviewing the "final decision of the Commissioner," the court will review and look primarily to the "Decision of the Appeals Council." However, to the extent the Council has adopted, agreed with, or otherwise relied upon the other decisions in the record, the court will include those evaluations and explanations in its review. The court will remember that its duty is to determine whether the Commissioner applied the correct legal standard, and whether substantial evidence in the record as a whole supports the "final decision of the Commissioner."

In a final preliminary matter which is determinative of Plaintiff's third allegation of error (that Dr. McGehee's report and evaluation were never evaluated by an ALJ), the court notes that Plaintiff's arguments imply that evidence presented to the Commissioner

12

must be first considered, evaluated, or weighed by an ALJ before it may be relied upon in formulating the final decision of the Commissioner. (Pl. Br. 9) ("The Appeals Council further erred in not remanding this matter for further consideration by the Administrative Law Judge despite the submission of significant additional evidence to the Appeals Council, much of which evidence has never been seen or considered by the ALJ."); id. at 16 ("This evidence was developed and submitted to the Appeals Council long after the ALJ decision being appealed in this matter. Accordingly, the ALJ has never had the benefit of seeing this evidence. Counsel urged the Appeals Council to remand this matter on the basis of this new evidence alone."). That is not the law.

When new, material, and chronologically relevant evidence is presented for the first time to the court, it must remand the case in order for the Commissioner to take the evidence and modify or affirm the earlier findings of fact, or decision, or both. 42 U.S.C. § 405(g) (sentence six). Moreover, if new, material, and chronologically relevant evidence was presented to the Appeals Council but not considered by the Council, the district court must remand the case for further proceedings so the evidence might be properly considered. Chambers v. Barnhart, 389 F.3d 1139, 1142 (10th Cir. 2004). This is so because the court may not weigh the evidence in the first instance, or determine disability for itself, but it may only review the decision of the Commissioner. Bowman, 511 F.3d at 1272.

However, Appeals Council review is not so limited. If the Appeals Council grants a request for review, it may "either issue a decision or remand the case to an

administrative law judge." 20 C.F.R. §§ 404.967, 416.1467. In its review, the Council

will consider all of the evidence in the record before the ALJ, "as well as any new and

material evidence submitted to it which relates to the period on or before the date of the

administrative law judge hearing decision." Id. §§ 404.976(b), 416.1476(b); see also,

§§ 404.970(b), 416.1470(b) ("The Appeals Council shall consider the additional evidence

only where it relates to the period on or before the date of the administrative law judge

hearing decision."). After the Council has reviewed all of the evidence in the record, and

any additional evidence received which comports with the requirements of 20 C.F.R.

§§ 404.970(b), 416.1470(b), 404.976(b), and 416.1476(b) (new, material, and

chronologically relevant), it "may affirm, modify, or reverse the administrative law judge

hearing decision, or it may adopt, modify, or reject a recommended decision." Id.

§§ 404.979, 416.1479. The court finds no error in the Appeals Council's determination to

evaluate the evidence itself and issue its decision without remanding to an ALJ for his

consideration and evaluation of the new evidence in the first instance.

## IV.    Analysis

As indicated above, the court agrees with Plaintiff that ALJ Taylor erred at step

two of his evaluation in finding that Plaintiff's mental impairments are not severe within

the meaning of the regulations. However, that fact is of no consequence here. The

Appeals Council's decision is the "final decision of the Commissioner" which the court

must review, and in that decision the Council found Plaintiff's depression/anxiety is a

severe impairment, and included that impairment within its finding of severe

14

impairments.  (R. 16, 19, finding no. 2).  Plaintiff has shown no step two error in the final

decision of the Commissioner.  Plaintiff's second allegation of error (that the <u>ALJ</u> erred in

finding that Plaintiff's mental health impairments are not "severe") does not establish

error in the "<u>final decision of the Commissioner</u>."  Further, and also as discussed above,

Plaintiff's third allegation of error (that Dr. McGehee's report and evaluation were never

evaluated by an ALJ) although true, does not establish error in the Commissioner's final

decision since the evidence was evaluated by the Council in its decision.

The court's review of the final decision, however, does result in a finding of error

when considering Plaintiff's fourth allegation of error (that the hypothetical question

presented by the ALJ to the vocational expert does not precisely match the RFC assessed

in the ALJ's decision).   Therefore, the Appeals Council's reliance upon the testimony of

the vocational expert is erroneous, and the court must remand for further consideration in

light of that error.  The court need not consider Plaintiff's remaining allegation of error

(that the ALJ erred in weighing the medical source opinions of Dr. Johns and Nurse

Practitioner Long) to determine whether remand is appropriate; but Plaintiff's arguments

in that regard may be made to the Commissioner on remand.

Plaintiff makes two arguments relating to the hypothetical question presented to

the vocational expert (VE) at the hearing.  (Pl Br. 17-18).  First, she argues that in the

RFC assessed in the final decision the Commissioner found that Plaintiff is able to

"handle" only occasionally, but that in the hypothetical question directed to the VE at the

hearing, the ALJ confused the terms "occasionally" and "frequently."  Plaintiff then

implies that because "bimanual dexterity and the use of upper extremities for handling is particularly crucial in assessing a person's ability to perform light and sedentary work," the court should find error in the Appeals Council's[4] reliance upon the vocational expert's response. Plaintiff also argues that the Appeals Council's RFC assessment that Plaintiff should be able to shift positions at will was not included in the hypothetical question presented to the VE, and therefore the Council's reliance upon the VE testimony was error. The Commissioner argues that there is no inconsistency between the RFC and the hypothetical question, because the Appeals Council[5] defined "occasionally" in its RFC as meaning two-thirds of the day; which is consistent with the ALJ's hypothetical question in which he explained that by "occasional handling" he meant handling things frequently but not constantly. He implies, therefore, that it was proper for the Council to rely upon the VE testimony.

Plaintiff's argument establishes inconsistency between the ALJ's hypothetical question and the ordinary usage of the term "occasional" in Social Security cases. As Plaintiff's argument implies, in the context of determining RFC, "occasional" has been defined as "occurring from very little up to one-third of the time," and "frequent" has

---

[4]As discussed herein, Plaintiff's specific arguments related to ALJ Taylor's decision, but in reviewing the "final decision of the Commissioner," the court has related Plaintiff's arguments to the Appeals Council's decision.

[5]As with Plaintiff's brief, the Commissioner's specific arguments related to ALJ Taylor's decision, but in reviewing the "final decision of the Commissioner," the court has related the Commissioner's arguments to the Appeals Council's decision.

been defined as "occurring from one-third to two-thirds of the time." Social Security

Ruling (SSR) 83-10, Determining Capability to do Other Work--the Medical-Vocational

Rules of Appendix 2, 1983 WL 31251, *5, 6. However, the ALJ defined the terms

differently when presenting his hypothetical to the VE. In relevant part, the ALJ

presented his hypothetical question as follows:

> Q     Ms. Salva, I'd like for you not[6] to assume for me that we have a
> hypothetical individual, and that this hypothetical individual is
> between the ages of 32 and 40. . . . Would have an unlimited ability
> to push and pull with her extremities. However, they could only
> occasionally climb, balance, stoop, kneel, crouch, crawl. In addition,
> they would have only an occasional ability to handle with their right
> -- well, bilaterally. And what I mean by that is they would be able to
> handle things frequently but not constantly.

(R. 1124). In response to the hypothetical question, the VE explained that such a

hypothetical individual would be unable to perform any of Plaintiff's past relevant work,

but that there are a significant number of jobs in the light occupational level in the

economy which such an individual has the capacity to perform. Id. 1124-25. In relevant

part, the Appeals Council's RFC found that Plaintiff could "[o]nly occasionally climb,

balance, stoop, kneel, crouch, crawl or handle, up to two-thirds of a workday." (R. 19,

finding no. 3). Relying upon this RFC assessment and the VE testimony, the Appeals

Council found that "there are a significant number of jobs in the national economy which

---

[6]Although the transcript literally states that the ALJ asked the VE not to assume a
hypothetical scenario, neither party suggests error, so the court will assume there was a
typographical error in transcription, and the ALJ actually stated, "I'd like for you now to
assume for me. . ."

[Plaintiff] could perform, including light jobs identified by the vocational expert at the hearing." (R. 20, finding no. 7).

In spite of a conflict with the ordinary usage of the terms "occasional" and "frequent" in this context, it is clear that in his hypothetical the ALJ defined the "occasional ability to handle" as being "able to handle things frequently but not constantly." (R. 1124). What is not so clear is whether he intended the VE to apply the same meaning to the term "occasional" when referring to postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling. Although he had just noted that the hypothetical individual could only occasionally climb, balance, stoop, kneel, crouch, and crawl, his specific definition only related to the manipulative limitation--that the hypothetical individual was "able to handle things frequently but not constantly." Thus, there was no clear indication to the VE that the ALJ's special definition of "occasional" applied equally to the postural limitations as to the manipulative limitations. However, in his decision ALJ Taylor clearly applied his special definition of "occasional" to both the postural and the manipulative limitations. (R. 37) ("She can only occasionally climb, balance, stoop, kneel, crouch, crawl, or handle. 'Occasional' refers to two thirds of a day."). The Appeals Council's application of this special definition in its decision is not so clear as the ALJ's; but it did not specifically apply different definitions to the postural and manipulative limitations, and the natural inference to be drawn from its language is that the special definition applies equally to postural as to manipulative limitations. Both in its discussion of RFC, and in its finding

18

regarding RFC, the Appeals Council framed the limitations identically: "Only occasional climb, balance, stoop, kneel, crouch, crawl or handle, up to two thirds of a workday." (R. 16, 19, finding no. 3).

While both the ALJ and the Appeals Council in this case utilized a special definition of "occasional," it is not clear whether the Appeals Council intended the special definition to apply equally to postural and manipulative limitations. This ambiguity requires remand to the Commissioner for clarification of his decision. Moreover, there is at least a second level of ambiguity in the record here. Not only is it unclear whether the Council intended the special definition to apply to both postural and manipulative limitations, it is even less clear whether the VE understood that the special definition applied in both instances; and it is equally unclear whether the VE, in fact, applied the special definition to either situation or to both situations. "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993) (citing Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting Ekeland v. Bowen, 899 F.2d 719, 722 (8th Cir. 1990))). This is error requiring remand.

Plaintiff's second argument regarding VE testimony also supports the need for remand, and the Commissioner's brief did not even address that argument. As Plaintiff argues, the RFC assessed by the Appeals Council required that Plaintiff "should be able to shift positions at will" (R. 17, 19, finding no.3), but that requirement was not even

suggested to the VE. Therefore, there is no evidence in the record suggesting that there is work within the RFC assessed for Plaintiff which would allow for shifting positions at will. Moreover, there is no indication whether the requirement to "shift positions at will" means to be able to alternate between sitting and standing or walking at will, or merely means that while Plaintiff is sitting, standing, or walking she must be able to adjust her posture, the positioning of her body, and/or her orientation to the environment at will. Plaintiff has shown error requiring remand for a proper decision of this case.

Plaintiff suggests that remand for calculation and immediate award of benefits is the proper remedy in this case, "[i]f the court is persuaded . . . that the findings of Nurse Practitioner Long, Dr. Johns, and Dr. McGehee should be credited . . . for the full time at issue." (Pl. Br. 18). Plaintiff cites no legal authority for the proposition she suggests, and provides no explanation how the record evidence requires such a result in the particular circumstances presented by this case, so the court will not adopt her suggestion. Moreover, it is not the court's prerogative to weigh the evidence in the first instance or to substitute its judgment for that of the Commissioner. <u>Bowman</u>, 511 F.3d at 1272.

**IT IS THEREFORE ORDERED** that the judgment entered in this case on March 4, 2008 (Doc. 8) be stricken in accordance with Rule 60(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that the Commissioner's decision is REVERSED,

and that <u>judgment shall now be entered</u> in accordance with the fourth sentence of 42

U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this

opinion.

Dated this <u>8th</u> day of March 2011, at Kansas City, Kansas.


<u>s:/ John W. Lungstrum           </u>
**John W. Lungstrum**
**United States District Judge**